UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JITENDER KESWANI,

                              Plaintiff,

                -v.-

SOVEREIGN JEWELRY INC., and
SATISH DARYANANI,

                              Defendants.

20 Civ. 8934 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Jitender Keswani brings this *pro se* action against Satish

Daryanani and Sovereign Jewelry Inc. ("Sovereign Jewelry," and together with

Daryanani, "Defendants"), stemming from a dispute over a decade-long jewelry

consignment relationship.  Plaintiff claims that Defendants breached the terms

of an oral contract and, further, that Defendants repeatedly defamed him,

thereby causing damage to his reputation and stanching the flow of his jewelry

business.  For these alleged wrongs, Plaintiff seeks compensatory and punitive

damages, as well as an accounting of any arrearages that Defendants believe

Plaintiff owes them.  Defendants move, unopposed, to dismiss Plaintiff's

Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of

Civil Procedure Rule 12(b)(1) and, in the alternative, for failure to state a claim

upon which relief can be granted pursuant to Federal Rule of Civil Procedure

12(b)(6).  For the reasons set forth in the remainder of this Opinion, the Court

grants Defendants' unopposed motion to dismiss.

## BACKGROUND[1]

### A.    Factual Background

### 1.    Plaintiff's Business Relationship with Defendants

Plaintiff, a citizen of New York, is involved in the retail sale of jewelry.

(Compl. 3; Hr'g Tr. 7:7-18).  In or about 2008, he founded a jewelry

consignment business, with offices in New York, Los Angeles, and the

Bahamas.  (Hr'g Tr. 6:17-18, 11:1-13).  Approximately one to two years after

establishing his business, Plaintiff entered into an oral contract with Sovereign

Jewelry, a wholesale supplier of jewelry, and its principal Daryanani.  (*See*

Compl. 4 (sourcing the beginning of the parties' business relationship to July

1, 2010, when the parties entered into an oral agreement)).  Pursuant to the

agreement, Defendants supplied jewelry to Plaintiff and extended loans to him

---

[1]    This Opinion draws its facts from the well-pleaded allegations of Plaintiff's Complaint ("Compl." (Dkt. #1)), which allegations the Court assumes to be true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  And because *pro se* litigants are afforded "a substantial degree of solicitude," *Tracy* v. *Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), the Court draws additional facts from statements that Plaintiff made during the conference held on December 15, 2020 ("Hr'g Tr." (Dkt. #15)), to the extent they are consistent with the allegations in the Complaint.  *See Lopez* v. *Cipolini*, 136 F. Supp. 3d 570, 579 (S.D.N.Y. 2015) ("In deciding a motion to dismiss a *pro se* complaint … it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint[.]" (internal quotation marks omitted)); *see also Yates* v. *Villalobos*, No. 15 Civ. 8068 (KPF), 2018 WL 718414, at *1 n.2 (S.D.N.Y. Feb. 5, 2018) (explaining that in the *pro se* context, "on a motion to dismiss … [c]ourts may also consider statements made in response to a defendant's request for a pre-motion conference and statements made during that conference").  Here, the Court considers Plaintiff's statements incident to its mandate to construe a *pro se* plaintiff's claims generously, as the Complaint otherwise lacks factual allegations sufficient to raise a "right to relief above the speculative level."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 545, 555 (2007).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss the Complaint as "Def. Br." (Dkt. #18), and to the exhibits attached thereto as "Def. Ex. [ ]" (Dkt. #19-20).  The Court later addresses its ability to consider on this motion the exhibits appended to Defendants' moving papers.  *See infra* notes 2, 4.

for the purpose of purchasing additional jewelry and other business-related items.  (Hr'g Tr. 7:7-8:1).  In consideration of the jewelry received, Plaintiff paid the amounts listed on invoices that Defendants provided alongside the conveyances of jewelry.  (*Id.* at 9:15-20, 13:13-19).  Over the course of the next approximately ten years, Plaintiff paid Defendants more than $25 million for merchandise and services.  (Compl. 4; Hr'g Tr. 18:18-24).

At an unspecified time prior to the commencement of this litigation, Defendants began accusing Plaintiff of being delinquent on payments owed to them and contacted Plaintiff's vendors to inform them of his outstanding debts. (Compl. 4 ("[L]ately Defendants began sabotaging [P]laintiff's flow of business and reputation by falsely accusing [P]laintiff of not fully paying them[.]"); *see also* Hr'g Tr. 13:23-14:4, 20:22-21:5).  After a review of his records, Plaintiff believes he is current on his debt obligations to Defendants.  (Compl. 4; Hr'g Tr. 19:20-22).  Despite Plaintiff's repeated requests for an audit of the parties' business relationship, Defendants have refused to furnish Plaintiff with such historical information or an accounting of the amount he allegedly owes. (Compl. 4; Hr'g Tr. 18:18-24).  Plaintiff rests his breach of contract claim on Defendants' failure to produce records of their relationship for the period from 2010 to 2020.  (Compl. 4).

### 2.   The Bahamas Action[2]

This case is not the only pending litigation arising out of Plaintiff's and

Daryanani's commercial dealings.  On July 24, 2020, Daryanani brought a

breach of contract claim against Plaintiff and eight other individuals and

entities in the jewelry business in the Supreme Court of the Commonwealth of

the Bahamas.  (*See* Bahamas Statement of Claim).[3]  Daryanani's claims

against Plaintiff and the other defendants in the Bahamas Action are

---

[2]   "When ruling on a Rule 12(b)(6) motion, [courts] may also consider 'matters of which a court may take judicial notice.'"  *Dixon* v. *von Blanckensee*, 994 F.3d 95, 101-02 (2d Cir. 2021) (quoting *Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)); *see generally* Fed. R. Evid. 201.  "[C]ourts routinely take judicial notice of documents filed in other courts ... not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Ass'n* v. *Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))).

Accordingly, the Court takes judicial notice of two filings made on the docket of a civil proceeding that Daryanani instituted against Plaintiff, which proceeding is currently pending before the Supreme Court of the Commonwealth of the Bahamas, Common Law Equity Side, 2020 CLE/gen/00594 (the "Bahamas Action").  (*See* Def. Ex. B (the "Bahamas Statement of Claim")).  *See Rothman* v. *Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of the complaint in another lawsuit as a public record); *Jianjun Lou* v. *Trutex, Inc.*, 872 F. Supp. 2d 344, 349 n.6 (S.D.N.Y. 2012) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."); *see also Giaguara S.p.A.* v. *Amiglio*, 257 F. Supp. 2d 529, 532 n.1 (E.D.N.Y. 2003) (taking notice of foreign pleadings) (citing *Brass* v. *Am. Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993)).

The Court emphasizes that the facts drawn from the Bahamas Statement of Claim or any related filing in the Bahamas Action are not presented for the truth of the matters contained therein, but rather to establish the general subject matter of the Bahamas Action and the existence of certain claims for relief and defenses in that related proceeding.

[3]   The additional defendants named in the Bahamas Action are Leon Griffin, Biswajit Pati, Treasures Bahamas Ltd., BJC Bahama Jewelry Company Ltd., Cotton House Bahamas Development Park Corp., Park Lane Jewelers Ltd, Raj Chandiramani, and Treasures International LLC.

predicated on a written contract that was signed by Daryanani, Plaintiff, and two other individuals named in the Bahamas Action on or about October 2, 2019 (the "October 2019 Contract").[4]   (*See id.* at ¶ 6).  The October 2019 Contract outlines the terms of a loan and the provision of consignment goods from Daryanani to Plaintiff and the other signatories.  (*Id.* at ¶ 7(6)-(8)).  In the Bahamas Action, Daryanani seeks $15 million in damages and the return of any unsold goods that were supplied by Daryanani on account of Plaintiff's and other defendants' alleged failure to make timely payments, all allegedly in violation of the terms of the October 2019 Contract.  (*Id.* at ¶¶ 10-13; *id.*, Prayer for Relief ¶ B(1), (4)).

On October 7, 2020, Plaintiff answered the Bahamas Statement of Claim and asserted a counterclaim against Daryanani, alleging Daryanani's breach of the October 2019 Contract and tortious interference with business relations.

---

[4]   Appended to Defendants' motion to dismiss as Exhibit A is a contract dated October 2, 2019, signed by Plaintiff, Daryanani, Griffin, and Chandiramani (the latter two of whom are also defendants named in the Bahamas Action).  The Court understands this contract to be the October 2019 Contract referenced in the Bahamas Statement of Claim.  (*See* Bahamas Statement of Claim ¶ 6).  The Court declines to take judicial notice of Defendants' Exhibit A, as it has been unable to ascertain whether the document was filed in the Bahamas Action, or whether it is otherwise publicly available.  And because the Complaint neglects to make even passing reference to this agreement, the Court does not find the contract to be an appropriate subject of judicial notice.  *See Cunningham* v. *Cornell Univ.*, No. 16 Civ. 6525 (PKC), 2017 WL 4358769, at *4 (S.D.N.Y. Sept. 29, 2017) (declining to take judicial notice of contracts that were "neither integral to the complaint nor publicly available").  All future references to the October 2019 Contract are drawn from the Bahamas Statement of Claim.

The Court further notes that Defendants appear to have inadvertently mislabeled Defendants' Exhibit A.  The cover page for the first exhibit appended to Defendants' motion to dismiss — which, as noted above, the Court believes to be the October 2019 Contract — contains the label "Exhibit B."  However, the entry for the exhibit on the Court's electronic case filing system refers to the document as Exhibit A.  To avoid any possible confusion, the Court designates the October 2019 Contract as Defendants' Exhibit A and the Bahamas Statement of Claim as Defendants' Exhibit B.

(*See* Def. Ex. C (the "Bahamas Defense")).  In his Bahamas Defense, Plaintiff contends that, at all relevant times, he was in full compliance with the terms of the October 2019 Contract.  (*Id.* at ¶ 3.1).

**B.    Procedural Background**

Plaintiff initiated the instant action on October 26, 2020, with the filing of the Complaint.  (Dkt. #1).  On November 19, 2020, Defendants filed a pre-motion letter requesting a conference to discuss their contemplated motion to dismiss the action.  (Dkt. #10).  On November 30, 2020, the Court issued an order scheduling a conference for December 15, 2020.  (Dkt. #12).  Plaintiff filed a response to Defendants' pre-motion submission on December 3, 2020 (Dkt. #13-14), and the pre-motion conference was held on December 15, 2020 (Dkt. #15).  At the conference, the Court set a briefing schedule for Defendants' motion to dismiss.  (*See* Minute Entry for December 15, 2020).

Defendants filed their motion to dismiss on February 16, 2021.  (Dkt. #17-20).  On April 13, 2021 — eight days past the deadline the Court set for Plaintiff's opposition papers — the Court *sua sponte* granted Plaintiff an extension of time to file his opposition until May 7, 2021.  (Dkt. #23).  On May 7, 2021, Plaintiff submitted a letter seeking an additional thirty days to file his opposition papers (Dkt. #24), which request the Court granted.  (Dkt. #25). Following the expiration of this thirty-day period, on June 11, 2021, the Court *sua sponte* granted Plaintiff a third extension until June 28, 2021.  (Dkt. #26). To date, Plaintiff has not submitted an opposition to Defendants' motion to

dismiss.  Therefore, the Court considers Defendants' motion unopposed, fully briefed, and ripe for decision.

## DISCUSSION

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction (Def. Br. 24-25), as well as under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (*id.* at 12-23).  As the instant motion implicates both the Court's jurisdiction and the adequacy of Plaintiff's pleadings, the Court begins by outlining the applicable legal standards for both types of challenges.

## A.    Applicable Law

### 1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

"Subject-matter jurisdiction is a threshold issue that must be addressed prior to the merits," *Allen* v. *N.Y.C. Hous. Auth.*, No. 15 Civ. 173 (ALC), 2016 WL 722186, at *4 (S.D.N.Y. Feb. 19, 2016), and "a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it," *Aurecchione* v. *Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks and citation omitted); *accord Sokolowski* v. *Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Federal courts have original jurisdiction over civil actions in which the parties have diversity of citizenship and the amount in controversy exceeds

$75,000.  28 U.S.C. § 1332(a).  This is known as diversity jurisdiction, as contrasted with jurisdiction based on the existence of a federal question.  *See* 28 U.S.C. § 1331.  Diversity jurisdiction requires complete diversity between the parties, meaning that no plaintiff has the same citizenship as any defendant.  *Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).  Here, Plaintiff represents that he is a citizen of New York and that both Daryanani and Sovereign Jewelry are citizens of Florida (Compl. 3), and Defendants do not contest the citizenship requirement.  Plaintiff seeks $66 million in monetary damages.

On a Rule 12(b)(1) motion, the challenge to subject matter jurisdiction may be facial or fact-based.  *Carter* v. *HealthPort Techs., LLC* , 822 F.3d 47, 56 (2d Cir. 2016).  As the instant motion is unopposed, and neither party has proffered any additional jurisdictional facts for the Court to consider, the Court construes Defendants' Rule 12(b)(1) arguments as a facial challenge.  When considering a facial challenge, a court must determine whether the pleading "allege[s] facts that affirmatively and plausibly suggest that" subject matter jurisdiction exists.  *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  For purposes of a Rule 12(b)(1) facial challenge, a court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff asserting jurisdiction.  *Id.* at 57.

### 2.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

"[A]lthough a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of

law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall* v. *Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000). Accordingly, "the plaintiff's failure to respond to a Rule 12(b)(6) motion does not [itself] warrant dismissal," and the district court must determine whether dismissal of the complaint is appropriate on the merits. *Id.* at 323.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). The Court is tasked with applying the same standard irrespective of whether a motion to dismiss is unopposed. *See Haas* v. *Com. Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) ("In deciding an unopposed motion to dismiss, a court is to assume the truth of a pleading's factual allegations and test only its legal sufficiency[.]" (internal quotation marks omitted) (quoting *McCall*, 232 F.3d at 322)); *accord Blanc* v. *Cap. One Bank*, No. 13 Civ. 7209 (NSR), 2015 WL 3919409, at *2-3 (S.D.N.Y. June 24, 2015). While the plausibility requirement "is not akin to a 'probability requirement' ... it asks for more than a sheer possibility that a defendant has

acted unlawfully." *Iqbal*, 556 U.S. at 678.  Toward that end, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review only a narrow universe of materials." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  This narrow universe includes "facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken," as well as documents that can properly be considered "integral" to the complaint.  *Id.* (internal citation omitted).  As discussed above, the Court takes judicial notice of the Statement of Claim and Defense that were filed in the Bahamas Action.  *See Int'l Star Class Yacht Racing Ass'n* v. *Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (explaining that court "may take judicial notice of a document filed in another court").

"[C]ourts must construe *pro se* pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'" *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).  "However inartfully pleaded, a *pro se* complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Legeno* v. *Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009) (summary order) (internal quotation marks and alterations omitted) (quoting *Posr* v. *Ct. Officer Shield No. 207*, 180 F.3d 409, 413 (2d Cir. 1999)).  "That said, the liberal

pleading standard accorded to *pro se* litigants is not without limits, and all normal rules of pleading are not absolutely suspended." *Hill* v. *City of New York*, No. 13 Civ. 8901 (KPF), 2015 WL 246359, at *2 (S.D.N.Y. Jan. 20, 2015) (internal quotation marks and citation omitted).  To survive a Rule 12(b)(6) motion to dismiss, a *pro se* plaintiff's factual allegations still must at least "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Even in the *pro se* context, the court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## B.    Analysis

### 1.    The Court Has Subject Matter Jurisdiction

Defendants argue that Plaintiff's demand for $66 million in damages "is a conclusory 'pie in the sky' number with no nexus to the purported harm alleged in the Complaint." (Def. Br. 25).  They continue that Plaintiff's monetary demand is not made in good faith and that it is a legal certainty that he will not be able to recover this amount.  (*Id.*).

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of

the statutory jurisdictional amount." *Scherer* v. *Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citation omitted).  "This burden is hardly onerous, however, for [the Second Circuit] recognize[s] a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  *Id.* (internal quotation marks and citation omitted).  However, defendants can overcome this rebuttable presumption if they can show to "a legal certainty that [the plaintiff] could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums."  *Colavito* v. *N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006).  "[T]he legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A.* v. *Am. Nat. Bank & Trust Co. of Chi.*, 93 F.3d 1064, 1070 (2d Cir. 1996) (quoting *Tongkook Am., Inc.* v. *Shipton Sportswear Co.*, 14 F.3d 781, 785-86 (2d Cir. 1994)); *see also Wolde-Meskel* v. *Vocational Instruction Project Cmty. Servs., Inc.,* 166 F.3d 59, 63 (2d Cir. 1999) ("[T]o demonstrate a filing in bad faith, '[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" (quoting *St. Paul Mercury Indem. Co.* v. *Red Cab Co.*, 303 U.S. 283, 289 (1938)).

Here, the Court cannot determine that it is a "legal certainty" that Plaintiff will not be able to recover the alleged amount in controversy. Defendants' substantive arguments, although plausible and potentially meritorious, do not establish with "legal certainty that plaintiff could not recover the amount alleged." *Colavito*, 438 F.3d at 221.  Plaintiff alleges that

his business has been "irreparably damaged" by Defendants' acts of "intimidation, defamation, and sabotage," and that the actual damages to his business are at least $25 million, with more potentially to be accounted for later in the litigation.  (*See* Compl. 4).  Even if Defendants believe this number to be too high, they concede that Plaintiff's claim of defamation may entitle him to damages. (Def. Br. 24).  Affording Plaintiff particular leniency as a *pro se* litigant, the Court finds that he has adequately pleaded facts indicating that the Court may exercise subject matter jurisdiction over this matter based on diversity.

"At this stage in the litigation, the bar is low, and the presumption in favor of good faith is strong."  *Gasery* v. *Kalakuta Sunrise, LLC*, 422 F. Supp. 3d 807, 818-19 (S.D.N.Y. 2019).  Plaintiff has sufficiently alleged that there is at least a "reasonable probability" that his claims exceed the $75,000 jurisdictional requirement.  Accordingly, the Court denies Defendants' motion to dismiss under Rule 12(b)(1).

### 2. The Bahamas Action Does Not Bar Consideration of Plaintiff's Claims

Separately, Defendants urge this Court to dismiss this case because they perceive it "to be nothing more than an attempt by Plaintiff to litigate, in a subsequent forum, issues raised, or which can be raised, in the Bahamas [Action]."  (Def. Br. 23).  The Defendants argue that the prior pending action doctrine embodies the "rule against duplicative litigation," pursuant to which "a Court will usually stay or dismiss a subsequent suit that duplicates a claim

or claims already pending before another court." (*Id.* at 22-23 (citing *First City Nat'l Bank & Tr. Co.* v. *Simmons*, 878 F.2d 76, 79-80 (2d Cir. 1989))).[5]

"A court has the inherent power to dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction." *Ole Media Mgmt., L.P.* v. *EMI Apr. Music, Inc.*, No. 12 Civ. 7249 (PAE), 2013 WL 2531277, at *2 (S.D.N.Y. June 10, 2013) (collecting cases). This prior pending action doctrine recognizes the "principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Royal & Sun All. Ins. Co. of Can.* v. *Century Int'l Arms, Inc.* ("*Royal & Sun All.*"), 466 F.3d 88, 94 (2d Cir. 2006).

At the same time, federal courts must be mindful of their "virtually unflagging obligation … to exercise the jurisdiction given them." *Colo. River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 817 (1976). By virtue of this obligation, "[f]ederal courts are reluctant to decline jurisdiction solely on the basis of concurrent proceedings in another jurisdiction." *Evergreen Marine Corp.* v. *Welgrow Int'l Inc.*, 954 F. Supp. 101, 103 (S.D.N.Y. 1997). The Second Circuit has stated that "[t]he task of a district court evaluating a request for

---

[5]     The Court notes that sister courts in this District have stayed lawsuits pending resolution of foreign actions in circumstances loosely analogous to the case at bar. *See, e.g.*, *Ole Media Mgmt., L.P.* v. *EMI Apr. Music, Inc.*, No. 12 Civ. 7249 (PAE), 2013 WL 2531277, at *6 (S.D.N.Y. June 10, 2013) (staying, rather than dismissing, a domestic lawsuit pending the outcome of a previously-filed action in Canada, where the issues in the two actions presented alleged breaches of separate contracts between the parties); *Evergreen Marine Corp.* v. *Welgrow Int'l Inc.*, 954 F. Supp. 101, 105 (S.D.N.Y. 1997) (staying, rather than dismissing, a domestic lawsuit pending the outcome of a previously filed action in Belgium, where both actions pertained to charges allegedly owed under the same service agreement). Because Defendants have not requested a stay of the present action, the Court only considers whether the prior pending action doctrine requires dismissal of this action in its entirety.

dismissal based on a parallel foreign proceeding is not to articulate a justification *for* the exercise of jurisdiction, but rather to determine whether *exceptional circumstances* exist that justify the surrender of that jurisdiction." *Royal & Sun All.*, 466 F.3d at 93 (citations omitted) (first emphasis in original, second emphasis added).  The Second Circuit has articulated five nonexclusive factors that courts should consider when determining whether to defer to a foreign proceeding, which include: (i) the similarity of the parties and issues; (ii) the interests of judicial economy; (iii) the order in which the actions were filed; (iv) the adequacy of the alternative forum; and (v) the convenience of, and potential prejudice to, either party.  *See id.* at 94; *accord Argus Media* v. *Tradition Fin. Servs. Inc.*, No. 09 Civ. 7966 (HB), 2009 WL 5125113, at *6 (S.D.N.Y. Dec. 29, 2009).  The Court considers these factors in turn.

*First*, there are differences in the parties named and the issues raised in the two actions, which differences counsel in favor of this Court's exercise of jurisdiction.  "For two actions to be considered parallel, the parties in the actions need not be the same, but they must be substantially the same, litigating substantially the same issues in both actions." *Royal & Sun All.*, 466 F.3d at 94.  Here, Daryanani and Plaintiff are parties to both actions, but Sovereign Jewelry is not named in the Bahamas Action.  Additionally, there are eight defendants in the Bahamas Actions who are neither named nor implicated in the present action.  There is also divergence in the issues presented in both actions.  The Bahamas Action rests entirely on an alleged breach of the October 2019 Contract, to which Plaintiff, Daryanani, and two

15

other individual defendants in the Bahamas Action are signatories.  While perhaps due to artful pleading, Plaintiff makes no mention whatsoever in the present suit of *any* written contract, let alone the October 2019 Contract that forms the basis of the Bahamas Action.  Plaintiff's pleading in this suit rests on an oral contract purportedly entered into in 2010.  On the record presented on this motion, the Court is unable to determine the interplay, if any, between the contracts giving rise to either action.  The dissimilarities between the two actions do not stop there, as Plaintiff's theory of damages in this action relates, in significant part, to Defendants' allegedly defamatory statements, which are wholly absent from the Bahamas Action.[6]  While it is the case that both actions arise, in part, from the business relationship between Plaintiff and Daryanani, there is at least one issue in the present case — defamation — that will not be addressed in the Bahamas Action.  *See Palm Bay Int'l, Inc.* v. *Marchesi Di Barolo S.P.A.*, 659 F. Supp. 2d 407, 414 (E.D.N.Y. 2009) ("[B]ecause one of the principal issues in this litigation will not be addressed in the [foreign] action, this factor weighs against dismissal.").  Consequently, the Court finds the dissimilarities of parties and issues in both actions to weigh against dismissal.

*Second* and relatedly, the interests of judicial economy counsel in favor of the Court's exercising jurisdiction over the instant matter.  Even if the breach of contract claim in the Bahamas Action bore on the amount of money that

---

[6]     Plaintiff's counterclaim in the Bahamas Action asserts against Daryanani claims for breach of the October 2019 Contract and tortious interference with Plaintiff's business. The counterclaim in the Bahamas Action does not allege that Daryanani defamed Plaintiff or anyone else.  (*See* Bahamas Defense 10, Counterclaim (i)-(iii)).

Plaintiff may owe Defendants, which is relevant to Plaintiff's instant defamation claim, the Court does not understand the resolution of that issue in the Bahamas Action to have preclusive effect on Plaintiff's claim for defamation. *See Advantage Int'l Mgmt., Inc.* v. *Martinez*, No. 93 Civ. 6227 (MBM), 1994 WL 482114, at *4 (S.D.N.Y. Sept. 7, 1994) ("[What] is required in this Circuit is that the parties and issues be sufficiently similar so that when a judgment issues from the foreign court, *res judicata* will apply."). Substantial efficiencies would therefore not be gained from this Court's affording deference to the foreign proceeding, where, as here, the Court perceives there to be at least one extant issue not presented in the foreign proceeding.[7]

*Third*, the Court views the sequence of the two actions as a largely neutral factor. Plaintiff filed this case nearly three months after the commencement of the Bahamas Action and approximately three weeks after he filed the Bahamas Defense, which ordinarily would counsel deference to the first-filed foreign proceeding. However, Defendants have represented to the

---

[7]     Courts have nevertheless dismissed cases where an issue presented in the domestic action could have been, or still could be, asserted in the foreign action. *See, e.g.*, *MLC (Bermuda) Ltd.* v. *Credit Suisse First Bos. Corp.*, 46 F. Supp. 2d 249, 252-53 (S.D.N.Y. 1999) (dismissing domestic lawsuit, in part, because "the primary difference between this action and the [foreign] action is simply in the way that [plaintiff] frames its claims"); *Advantage Int'l Mgmt.* v. *Martinez*, No. 93 Civ. 6227 (MBM), 1994 WL 482114, at *2 (S.D.N.Y. Sept. 7, 1994) (dismissing later-filed domestic lawsuit and noting that claims in the domestic action could be brought as counterclaims in earlier-filed foreign action). The Court declines to defer to the foreign litigation out of respect for Plaintiff's choice of forum for his defamation claim. *See Evergreen Marine Corp*, 954 F. Supp. at 104-05 ("[A] plaintiff's choice of forum ordinarily is entitled to substantial deference." (citing *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508 (1947))). Where, as here, Plaintiff did not initiate the Bahamas Action and the Court perceives meaningful differences between the issues raised in both actions, the Court does not find it appropriate to hold Plaintiff to Defendant's forum selection for all disputes arising out of their business relationship.

court that the Bahamas Action "is still pending and the parties are awaiting a judicial ruling on the pleadings and submissions" (Def. Br. 4), and the Court has no reason to doubt this nascent procedural posture.  That the Bahamas Action remains in its incipiency lessens the rationale for deferring to the first-filed action, as there is less risk that the exercise of this Court's jurisdiction would defeat any substantial efforts expended by the parties or the court in the Bahamas Action.  *See Ole Media Mgmt.*, 2013 WL 2531277, at *5-6 (finding the sequence of actions to be a "neutral or close to it" factor where the foreign action was filed nearly fourteen months prior to the domestic action, but "[t]he [foreign] litigation ha[d] not reached a significantly advanced stage").

*Fourth*, the Court does not understand either party to be disputing the adequacy of relief available in the Bahamian courts as to the matters presented therein.  However, because the Court perceives its task as adjudicating issues distinct from those presented in the Bahamas Action, the adequacy of the forum does not significantly alter the Court's weighing of the relevant factors.

*Finally*, the inconvenience to Defendants of having to defend against the instant action in federal court in the United States does not weigh in favor of renouncing federal jurisdiction.  Both Daryanani and Sovereign Jewelry are U.S. citizens (*see* Compl. 4 (noting that both Defendants are citizens of Florida)), and the Court understands Plaintiff's allegations to transcend Bahamian borders (*see, e.g.*, Hr'g Tr. 30:3-10 ("[H]e's calling every single one of my suppliers … [which] ruined my last 20 years of my reputation")).  Thus, the

Court does not perceive undue prejudice to flow to Defendants from the Court's exercise of jurisdiction over this action.

After evaluating the above factors, the Court finds that Defendants have not demonstrated the existence of "exceptional circumstances" justifying the Court's relinquishment of jurisdiction in this case.  *See Royal & Sun All.*, 466 F.3d at 93 ("The exceptional circumstances that would support such a surrender must, of course, raise considerations which are not generally present as a result of parallel litigation, otherwise the routine would be considered exceptional, and a district court's unflagging obligation to exercise its jurisdiction would become merely a polite request.").  With these threshold issues resolved, the Court next considers the sufficiency of Plaintiff's pleadings.

### 3.    Plaintiff Has Failed to State a Claim for Relief

Defendants interpret the Complaint to assert three causes of action: (i) equitable accounting; (ii) breach of contract; and (iii) defamation.[8]  In consideration of the Court's obligation to construe a *pro se* plaintiff's allegations to "raise the strongest arguments that they suggest," *Cruz*, 202 F.3d at 597 (citation omitted), the Court finds that the Complaint, in conjunction with Plaintiff's other filings and statements to the Court, raises a potential fourth claim as well: tortious interference with a business relationship.

---

[8]    Plaintiff prepared the Complaint using a fillable *pro se* form made available on the federal judiciary's website, titled "Complaint for a Civil Case Alleging Breach of Contract."  *See* United States Courts, *Pro Se Form* 4 (December 1, 2016), *available at* https://www.uscourts.gov/forms/pro-se-forms/complaint-civil-case-alleging-breach-contract.  Plaintiff does not specifically invoke any other cause of action in the Complaint.

Defendants contend that the factual allegations in the Complaint are insufficient to make out a plausible claim for any of the three causes of action identified in the Complaint.  (Def. Br. 8).  The Court agrees with Defendants that Plaintiff has failed to plead facts sufficient to support plausible claims for an equitable accounting, breach of contract, or defamation.  The Court also concludes that while the factual circumstances presented in the Complaint possibly give rise to a claim of tortious interference, they lack the specificity necessary to make out a valid claim.  The Court assesses each of the four claims in turn.

### a.    Equitable Accounting

As relief in this action, Plaintiff seeks, in part, "an order compelling [D]efendants to … produce a complete audit regarding all remittances and payments made to [D]efendants directly or through vendors for a period of 10 years[.]"  (Compl. 4; *see also* Hr'g Tr. 29:3-8 ("I'm asking for a full audit … from day one how much I owe [Defendants] from ten years ….  And if I owe him, then I owe him money, and I will pay.  But I just want to know, because my books, I do not owe him [any more] money.").  While it is conceivable that Plaintiff could seek discovery from Defendants on any claims surviving Defendants' motion to dismiss, he has failed to assert grounds entitling him to an equitable accounting.

An accounting is an "equitable remedy … designed to require a person in possession of financial records to produce them, demonstrate how money was expended and return pilfered funds in his or her possession."  *Roslyn Union*

*Free Sch. Dist.* v. *Barkan*, 16 N.Y.3d 643, 653 (2011).  Under New York law,[9] to bring a claim for an accounting, a plaintiff must allege "[i] relations of a mutual and confidential nature; [ii] money or property entrusted to the defendant imposing upon him a burden of accounting; [iii] that there is no adequate legal remedy; and [iv] in some cases, a demand for an accounting and a refusal." *Ellington Credit Fund, Ltd.* v. *Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011) (quoting *IMG Fragrance Brands, LLC* v. *Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009)).  "The purpose of an equitable accounting is to require a fiduciary to show what he did with the principal's property." *Soley* v. *Wasserman*, 823 F. Supp. 2d 221, 237 (S.D.N.Y. 2011).  "If a plaintiff is successful in an accounting claim, in addition to returning the property, a fiduciary must return any profits generated by the use of the property." *Id.*

Plaintiff's claim for an accounting fails because he does not "allege adequate facts to suggest that the parties were in a relationship of sufficient trust and confidence to create either a fiduciary duty or a confidential relationship." *Stadt* v. *Fox News Network*, 719 F. Supp. 2d 312, 323 (S.D.N.Y.

---

[9]     Subject matter jurisdiction in this case is based upon diversity of citizenship, thus obliging the Court to apply the choice of law rules of the forum state.  *See Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  New York choice of law rules mandate application of the substantive law of the state with the most significant relationship to the legal issue.  *See, e.g., Skaff* v. *Progress Int'l, LLC*, No. 12 Civ. 9045 (KPF), 2014 WL 5454825, at *8 (S.D.N.Y. Oct. 28, 2014) (quoting *Intercontinental Plan., Ltd.* v. *Daystrom, Inc.*, 24 N.Y.2d 372, 382 (1969)).  Defendants' briefing indicates their belief that New York law applies in this case (*see, e.g.*, Def. Br. 13, 16, 20), and Plaintiff has represented to the Court that the headquarters of his business is in New York (Hr'g Tr. 11:8-13), and therefore presumably suffered injury in New York.  Accordingly, the Court is satisfied that New York has the most significant relationship to the legal issues presented in the Complaint and will apply New York law.

2010).[10]  Plaintiff describes a longstanding relationship with Defendants involving the consignment of jewelry and the borrowing of money that resembles a conventional arm's-length business relationship, but fails to set forth any facts indicating that Plaintiff "reposed trust or confidence in the integrity and fidelity of [Defendants] who thereby gain[ed] a resulting superiority or influence[.]" *Tchrs. Ins. & Annuity Ass'n of Am.* v. *Wometco Enters., Inc.*, 833 F. Supp. 344, 349 (S.D.N.Y. 1993); *see also Abercrombie* v. *Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006) ("[F]iduciary relationships typically do not arise between parties engaging in arms length business transactions[.]").

Moreover, even if Plaintiff had adequately alleged the existence of a "mutual and confidential" relationship, an accounting would still be improper for at least two reasons.  *First*, Plaintiff has not set forth facts indicating that he entrusted any money or property with Defendants — indeed, his pleadings suggest the opposite (*i.e.*, that Defendants loaned money or consigned property *to him*).  *Second*, Plaintiff seeks $66 million in monetary damages, on theories of breach of contract and defamation, and "discovery as to the measure of any damages will be available to him should he move forward on those claims[.]" *Anderson* v. *Greene*, No. 14 Civ. 10249 (KPF), 2016 WL 4367960, at *18

---

[10]    Defendants argue that Plaintiff specifically repudiated the existence of a fiduciary relationship in the Bahamas Defense.  (Def. Br. 13).  The Court does not give any credence to this argument, because even though the Court took judicial notice of the Bahamas Defense, it cannot assess at this stage the truth or falsity of the matters asserted therein.

(S.D.N.Y. Aug. 10, 2016).  It therefore cannot be said that Plaintiff lacks a remedy at law so as to give rise to a claim for equitable relief.

While the Court acknowledges Plaintiff's frustration related to his inability to pin down the precise amount of money that Defendants believe he owes them, an action for an equitable accounting is not the proper channel to resolve this issue.  Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claim for an accounting.

### b.    Breach of Contract

As the basis for his breach of contract action, Plaintiff makes reference to an oral contract that he entered into with Defendants on July 1, 2010.  (Compl. 4).  Plaintiff claims that Defendants breached this oral agreement when they "refused and failed to produce a reputable certified audit [or] tax returns to prove and show all payments they received [from Plaintiff] … with respect to the said consignment for the period 2010 to 2020[.]"  (*Id*.).  Defendants argue that Plaintiff has failed to plead the existence of a valid and binding contract.  (Def. Br. 17).  Even if the Court were to find that Plaintiff has plausibly alleged a valid agreement — a dubious proposition, for reasons the Court will explain — Defendants contend that Plaintiff has nevertheless failed to outline any of the agreement's major terms or explain how his alleged damages relate to Defendants' purported breach of the agreement.  (*Id.* at 17-18).

The Court agrees with Defendants' arguments and finds that Plaintiff has failed to state a valid breach of contract claim, under either an express or

implied theory of contract.[11]  To successfully plead a breach of contract claim under New York law, a complaint must allege: "[i] the existence of an agreement, [ii] adequate performance of the contract by the plaintiff, [iii] breach of contract by the defendant, and [iv] damages." *Eternity Glob. Master Fund Ltd.* v. *Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp.* v. *Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).  With respect to the first element, "a complaint must 'allege the essential terms of the parties' purported contract "in nonconclusory language," including the specific provisions of the contract upon which liability is predicated.'" *Childers* v. *N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014) (quoting *Sirohi* v. *Trs. of Columbia Univ.*, 162 F.3d 1148, 1998 WL 642463, at *2 (2d Cir. 1998) (summary order)).  Moreover, "[a] complaint 'fails to sufficiently plead the existence of a contract' if it does not provide 'factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms.'" *Id.* (quoting *Valley Lane Indus. Co.* v. *Victoria's Secret Direct Brand*, 455 F. App'x 102, 104 (2d Cir. 2012) (summary order)).

---

[11]    Defendants further argue that Plaintiff seemingly disclaimed the existence of a prior oral agreement during the pre-motion conference.  (Def. Br. 17 n.3 (quoting Hr'g Tr. 9:15-18 ("There is no agreement.  We were just providing the invoice and then we had to pay for it.  It's not like any agreement I have to do it.  This being the invoice, you know, I have to pay the invoice."))).  While this statement (as well as certain others Plaintiff made during the conference) fundamentally undercuts Plaintiff's breach of contract claim, the Court declines to consider on this motion factual assertions that contradict Plaintiff's representations in the Complaint.  *Cf. Williams* v. *Koenigsmann*, No. 03 Civ. 5267 (SAS), 2004 WL 315279, at *1 n.1 (S.D.N.Y. Feb. 17, 2004) ("The policy reasons favoring liberal construction of *pro se* pleadings warrant the Court's consideration of the allegations contained in plaintiff's memorandum of law, *at least where those allegations are consistent with the allegations in the complaint*." (emphasis added)).

Here, Plaintiff has failed to satisfy his burden of alleging the existence of
an express oral agreement with Defendants.  The Complaint — even when
assessed alongside the non-contradictory statements Plaintiff made at the pre-
motion conference — contains scant detail regarding the formation of an oral
agreement between the parties in 2010 or any major terms of this putative
agreement.  The closest Plaintiff comes to recounting the formation of a
contract is his statement at the conference communicating: "I've known
Sovereign Jewelry for the last 20 years....  [T]hen I opened my own company in
2008.  And then after two years, I reconnected with Mr. Satish Daryanani, and
we started working together."  (Hr'g Tr. 6:16-20).  Plaintiff's unadorned
representation that he "started working" with Defendants does not suffice to
allege the existence of an express agreement, nor does it indicate the parties'
intention or assent to be bound to any specific contractual terms.
Furthermore, Plaintiff has failed to allege, with any degree of specificity, the
alleged contract's material terms.  And without a sense of the reciprocal
obligations that ran between the parties, Plaintiff's breach of contract claim
must fail.  *See Missigman* v. *USI Ne., Inc.*, 131 F. Supp. 2d 495, 506 (S.D.N.Y.
2001) ("[U]nless a court can determine what the agreement is, it cannot know
whether the contract has been breached, and it cannot fashion a proper
remedy.").

Plaintiff also fails to allege the existence of an implied contract.  "It is well
settled under New York law that, even if there is no written contract between
two parties, 'a contract may be implied where inferences may be drawn from

the facts and circumstances of the case and the intention of the parties as indicated by their conduct.'" *Missigman*, 131 F. Supp. 2d at 512 (quoting *Ellis* v. *Provident Life & Accident Ins. Co.*, 3 F. Supp. 2d 399, 409 (S.D.N.Y. 1998)). "[T]o survive a motion to dismiss a plaintiff must allege 'sufficient specific, concrete, factual representations such that they could be interpreted to supply the terms of an implied contract.'" *Brandr Grp.* v. *Port Auth. of N.Y. & N.J*, No. 19 Civ. 974 (ALC), 2020 WL 1489802, at *2 (S.D.N.Y. Mar. 26, 2020) (quoting *Hudson & Broad, Inc.* v. *J.C. Penney Corp., Inc.*, No. 12 Civ. 3239 (KBF), 2013 WL 3203742, at *3 (S.D.N.Y. June 18, 2013)).  Here, Plaintiff has recounted a course of dealing in the jewelry consignment business with Defendants spanning at least a decade (Hr'g Tr. 7:7-13, 9:6-20), which when liberally construed may give rise to an inference of an implied contract.  But even giving Plaintiff the benefit of the doubt, he has at most alleged that for a period of years Defendants supplied him with jewelry on consignment, in exchange for which Plaintiff would pay amounts invoiced to him by Defendants. (*Id.* at 9:15-20).  Plaintiff provides no detail regarding the frequency with which Defendants were to supply goods to Plaintiff under the agreement, nor any indication that Defendants were under an obligation to continue supplying him merchandise at any recurrent interval.  The paucity of detail regarding the material terms of Plaintiff's purported implied agreement, on its own, negates the existence of an implied contract.

Even assuming *arguendo* that Plaintiff has sufficiently pleaded the existence of an implied contract, his claims still fail, for he has offered no

evidence whatsoever to suggest that this implied contract obliged Defendants to furnish Plaintiff with "a reputable audit [or] tax returns" or other historical financial information of the sort.  (Compl. 4).  *See Frontline Processing Corp.* v. *Merrick Bank Corp.*, No. 13 Civ. 3956 (RPP), 2014 WL 837050, at *3 (S.D.N.Y. Mar. 3, 2014) (dismissing breach of contract claims that failed to specify "how the Defendant allegedly failed to perform on its contractual obligations"). Plaintiff does not allege that Defendants ever provided him with such a comprehensive audit in the past, and his request for such information nearly ten years into their business relationship does not give rise to an *ex post* contractual obligation to provide the same.  On the facts alleged regarding Plaintiff's course of dealing with Defendants, the Court is unable to derive any basis that would contractually oblige Defendants to furnish Plaintiff with a certified audit arising out of their business relationship.  Furthermore, the Court finds that Plaintiff has failed to plead Defendants' breach of any other term that could plausibly be included in the alleged agreement.  Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's breach of contract claim.[12]

---

[12]     Defendants assert that Plaintiff's claim for breach of contract must fail for the independent reason that it violates the Statute of Frauds.  (Def. Br. 21-22).  In New York, "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith ... if such agreement ... [b]y its terms is not to be performed within one year[.]"  N.Y. Gen. Oblig. Law § 5-701(a)(1).  As relevant here, "contracts of indefinite duration are deemed to be incapable of being performed within a year, and thus fall within the ambit of the Statute of Frauds."  *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 419 (S.D.N.Y. 2007) (citation omitted).  Insofar as Plaintiff seeks to enforce the terms of an open-ended oral agreement lasting indefinitely into the future, the Court agrees with Defendants that the Statute of Frauds bars Plaintiff's claim for breach of contract.

### c. Defamation

Plaintiff also levies allegations against Defendants that sound in defamation.  Specifically, Plaintiff argues that "lately [D]efendants began sabotaging [his] flow of business and reputation by falsely accusing [him] of not fully paying them[.]"  (Compl. 4).  Unable to discern the precise statements that Plaintiff claims are defamatory, Defendants argue that to the extent Plaintiff seeks to derive a cause of action from the filing of the Bahamas Statement of Claim or the content contained therein, such statements are protected by absolute litigation immunity.  (Def. Br. 19-20).  On the assumption that Plaintiff might be challenging as defamatory statements made outside of the Bahamas Statement of Claim, Defendants posit that Plaintiff has failed to plead the basic elements of defamation.  (*Id.* at 20).

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Lan Sang* v. *Ming Hai*, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013) (citation omitted).  To state a claim for defamation under New York law, a plaintiff must show "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander *per se*, and (vii) not protected by privilege." *Albert* v. *Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001) (citing *Dillon* v. *City of New York*, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)).

Courts in this District have repeatedly held that a defamation claim "is only sufficient if it adequately identifies 'the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated.'" *Thai* v. *Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (quoting *Scholastic, Inc.* v. *Stouffer*, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000)); *accord Sparrow Fund Mgmt. LP* v. *Mimedx Grp., Inc.*, No. 18 Civ. 4921 (PGG) (KHP), 2019 WL 1434719, at *6 (S.D.N.Y. Mar. 31, 2019); *see also Keady* v. *Nike, Inc.*, 116 F. Supp. 2d 428, 439 (S.D.N.Y. 2000) ("[W]hile the defamation need not be plead[ed] *in haec verba*, a pleading is only sufficient if it adequately alleges 'the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated.'" (citation omitted)), *aff'd in part, vacated in part on other grounds,* 23 F. App'x 29 (2d Cir. 2001) (summary order).  "Under the liberal pleading standards of Fed. R. Civ. P. 8, this requires a plaintiff to identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Chidume* v. *Greenburgh-N. Castle Union Free Sch. Dist.*, No. 18 Civ. 1790 (PMH), 2020 WL 2131771, at *14 (S.D.N.Y. May 4, 2020) (internal quotation marks omitted) (quoting *Alvarado* v. *Mt. Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 790 (S.D.N.Y. 2019)).  "The central concern is that the complaint afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Scholastic, Inc.*, 124 F. Supp. 2d at 849 (quoting *Kelly* v. *Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986)).

Here, Plaintiff fails to "allege defamation with the requisite specificity."

*Camp Summit of Summitville, Inc.* v. *Visinski*, No. 06 Civ. 4994 (CM) (GAY), 2007

WL 1152894, at *12 (S.D.N.Y. Apr. 16, 2007).  Examining the contents of the

Complaint, Plaintiff's only allegation in support of his defamation claim is the

bare assertion that "Defendants used unacceptable business practice[s] of

intimidation, defamation and sabotage of vendors who deal directly with

[P]laintiff and irreparably damaged his business in the process."  (Compl. 4).

Without additional information regarding the content of the allegedly

defamatory statements, to whom they were directed, and under what

circumstances, this conclusory assertion of defamatory business practices does

not "afford [Defendants] sufficient notice of the communications complained of

to enable [them] to defend [themselves]."  *Kelly*, 806 F.2d at 46.

Although Plaintiff added some color during the pre-motion conference to

the defamatory business practices he is challenging in this suit, his allegations

remain bereft of the details necessary to sustain his claim.  At the conference,

Plaintiff clarified that he is challenging Defendants' tarnishing of his carefully

crafted reputation in the jewelry industry because they began "calling every

single one of [his] suppliers" and saying "I'm suing him in the Bahamas, he

never paid me, he's a thief, he never pays his bills, I will take over his

business."  (Hr'g Tr. 30:3-8).  Even viewing the pleadings as supplemented by

Plaintiff's statements at the conference, the Court finds that he still has not

pleaded defamation with the appropriate degree of specificity.  To wit, Plaintiff

gestures broadly to his "suppliers" and "vendors" — a group of unknowable size

30

on these meager facts — but fails to allege exactly "to whom the allegedly defamatory statements were made and when exactly these statements were made." *Cullen* v. *Citibank, N.A.*, No. 08 Civ. 10317 (KMK), 2010 WL 11712913, at *5 (S.D.N.Y. Sept. 30, 2010); *see also Am. Lecithin Co.* v. *Rebmann*, No. 12 Civ. 929 (VSB), 2017 WL 4402535, at *24 (S.D.N.Y. Sept. 30, 2017) (dismissing defamation claim where plaintiff "fail[ed] to allege to whom the statements were made, [and] when, where or how they were communicated").  The Court should not be understood as demanding at the pleading stage that a plaintiff asserting a defamation cause of action chronicle each and every individual or entity to whom a defendant allegedly communicated defamatory information — indeed, the federal pleading standard is more lenient.  But on these facts, where Plaintiff has failed to specify even a single recipient of Defendants' ostensibly defamatory statements, or to indicate when these statements were communicated or whether it was Daryanani, himself, or an affiliate of Sovereign Jewelry who communicated the challenged statements, Plaintiff's claim of defamation fails to provide Defendants with adequate notice of essential facts necessary to defend themselves.  *See, e.g., Chidume*, 2020 WL 2131771, at *14 (dismissing a plaintiff-teacher's defamation claim based, in part, on alleged defamatory statements that were made to "other teachers"); *Camp Summit of Summitville*, 2007 WL 1152894, at *11-12 (dismissing defamation claim based on defendants' statements to "campers' parents" accusing plaintiff of being "engaged in illegal conduct" because plaintiff "neither

allege[d] who … made the defamatory remarks, nor to whom the comments were made").

Because the Court finds Plaintiff to have provided insufficient factual detail regarding Defendants' alleged defamatory statements, the Court grants Defendants' motion to dismiss Plaintiff's claim of defamation.[13]

### d.   Tortious Interference with Business Relations

The Complaint also sketches the outlines of a cause of action for tortious interference with Plaintiff's existing business relations, on a theory similar to that of Plaintiff's defamation claims.  "Under New York law, to state a claim for tortious interference with a prospective economic advantage or business relation, the plaintiff must allege that [i] it had a business relationship with a third party; [ii] the defendant knew of that relationship and intentionally interfered with it; [iii] the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and [iv] the defendant's interference caused injury to the relationship."  *Ray Legal Consulting Grp.* v. *DiJoseph*, 37 F.

---

[13]    Defendants also argue that Plaintiff seeks to challenge statements that are protected by the absolute litigation privilege, which "prohibits defamation claims arising out of statements made in litigation if, by any view or under any circumstances, it may be considered pertinent to the litigation."  *Lue* v. *JPMorgan Chase & Co.*, No. 19 Civ. 9784 (KPF), 2021 WL 1108558, at *4 (S.D.N.Y. Mar. 23, 2021) (internal quotation marks omitted) (quoting *Tagliaferri* v. *Szulik*, No. 15 Civ. 2685 (LGS), 2015 WL 5918204, at *3 (S.D.N.Y. Oct. 9, 2015)); *see also Front, Inc.* v. *Khalil*, 24 N.Y.3d 713, 718 (2015) ("[I]t is well-settled that statements made in the course of litigation are entitled to absolute privilege[.]").  As described above, the Court does not understand Plaintiff's theory of defamation to be predicated on statements made either in this litigation or the Bahamas Action.  However, to the extent Plaintiff has suggested an intention to hold Defendants or Defendants' counsel liable for statements made during this litigation (*see* Dkt. #14 at 2 ("[Defense counsel] in his pre-motion letter to this Court falsely claimed that I was not the one who filed and authorized the actions presently before this court.")), the absolute litigation privilege applies.

Supp. 3d 704, 718 (S.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Kirch* v. *Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006)).[14]

Here, Plaintiff has failed to satisfy the pleading standard for tortious interference with existing business relations. As noted earlier with respect to Plaintiff's defamation claim, Plaintiff has not specified a particular business relationship with which Defendants have interfered. Plaintiff's barebones allegations regarding Defendants' sabotage of his relationships with "vendors" and "suppliers" are insufficient to set forth a cause of action for tortious interference. *See, e.g.*, *Nourieli* v. *Lemonis*, No. 20 Civ. 8233 (JPO), 2021 WL 3475624, at *6 (S.D.N.Y. Aug. 6, 2021) (dismissing Plaintiff's claim for tortious relations with its "customers" because "these types of generalized allegations about hypothetical business relations are not enough."); *see also Universal Marine Med. Supply, Inc.* v. *Lovecchio*, 8 F. Supp. 2d 214, 221 (E.D.N.Y. 1998) (dismissing claim that "defendants [interfered] with business relations between [plaintiff] and 'its customers'" because the complaint did not allege "any specific business relations with a third party"). Moreover, Plaintiff has failed to present any facts to suggest that Defendants "acted solely out of malice, or used dishonest, unfair, or improper means." *See Clean Coal Techs., Inc.* v. *Leidos, Inc.*, 377 F. Supp. 3d 303, 322 (S.D.N.Y. 2019), *reconsideration denied*, No. 17 Civ. 9678 (KPF), 2019 WL 5960202 (S.D.N.Y. Nov. 13, 2019) ("To state a

---

[14]     Plaintiff does not allege the existence of any specific contract with which Defendants may have interfered. Thus, the Court does not consider Plaintiff to have plausibly presented a claim for tortious interference with an existing contract, which is assessed under a different legal standard.

33

prospective-economic-advantage claim, a plaintiff must show that 'the defendant's conduct ... amount[s] to a crime or an independent tort,' or that the defendant has 'engage[d] in conduct for the sole purpose of inflicting intentional harm on' the plaintiff." (quoting *Carvel Corp.* v. *Noonan*, 3 N.Y.3d 182, 190 (2004))).

Accordingly, Plaintiff's tortious interference claim is dismissed.

### 4.    The Court Grants Leave to Amend

"Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'" *Gorman* v. *Covidien Sales, LLC*, No. 13 Civ. 6486 (KPF), 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014) (quoting Fed. R. Civ. P. 15(a)(2)).  Consistent with this liberal amendment policy, "'[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" *Id.* (alteration in *Gorman*) (quoting *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  That being said, "it remains 'proper to deny leave to replead where ... amendment would be futile.'" *Id.* (quoting *Hunt* v. *All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998)).

Although several considerations weigh against granting leave to amend, the Court will provide Plaintiff an opportunity to file an amended complaint in this matter.  Plaintiff has had the benefit of an extensive colloquy with the Court, which colloquy the Court used to supplement the allegations contained in the Complaint.  Additionally, Plaintiff failed to oppose Defendants' motion to dismiss, despite a generous briefing schedule and multiple extensions to file an

opposition.  (*See* Dkt. #23-26).  Nevertheless, a *pro se* complaint "should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated[.]" *Shomo* v. *City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (alterations and citation omitted).  Because Plaintiff may be able to plead some of his claims adequately, the Court affords Plaintiff the opportunity to do so in an amended complaint.

Plaintiff is directed to file an amended complaint within forty-five days of the date of this Opinion in consideration of the pleading deficiencies identified above.  Any new amended complaint will replace, not supplement, the Complaint currently before the Court.  The amended complaint therefore must contain all of the claims and factual allegations Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the forty-five-day deadline, this action will be dismissed with prejudice for failure to prosecute.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's claims are dismissed without prejudice with leave to amend.  As detailed above, Plaintiff may file an amended complaint within forty-five days of the date of this Opinion.  Failure to abide by this deadline will result in the case being dismissed with prejudice.

The Clerk of Court is directed to terminate the pending motion at docket entry 17.  The Clerk of Court is further directed to mail a copy of this Opinion to Plaintiff at his address of record.

SO ORDERED.

Dated:      September 29, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge